## Summers v. Spivey's Administrator.

(Decided November 24, 1931.)

214

B. J. BETHURUM for appellant.

C. C. WILLIAMS and J. E. SANDUSKY for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

This action was instituted by Sam Spivey, administrator of George Spivey, in the Rockcastle circuit court against Mahlon Summers and Bradley Summers. In the petition it is alleged that George Spivey's death resulted from injuries received when he was struck by an automobile owned by Mahlon Summers, but which at the time was being negligently operated by his son, Bradley Summers. Recovery from the elder Summers was sought under the family purpose doctrine. Prior to the trial of this action, Bradley Summers was indicted for the murder of George Spivey, and on trial was convicted. On appeal, the judgment was reversed. In the opinion found in Summers v. Commonwealth, 236 Ky. 499, 33 S. W. (2d) 594, the facts and circumstances of the case as developed by the proof are fully and correctly detailed. The evidence in that case being in all material respects practically the same as in this case, reiteration is saved by reference to that opinion.

As directed by the court, the jury found for defendant Mahlon Summers, but on the issues submitted as to Bradley Summers the jury returned a verdict in favor of the plaintiff for the sum of $1,000. From a judgment based on that verdict, Bradley Summers has appealed.

It is first argued by appellant's counsel that the verdict of the jury is flagrantly against the weight of evidence, but a careful consideration of the argument discloses that its challenge goes to the credibility of the witnesses rather than to the quantum of the evidence. The chief witness for plaintiff was Tom Bryant, who was in the automobile with appellant when the accident is alleged to have occurred, and his evidence tends to establish very gross negligence on part of appellant. This witness was confronted with an affidavit signed and sworn to, prior to the trial, which he admits he executed, and which is wholly at variance with his statements in

this case. It is also shown that he testified before the grand jury and made statements in substance and effect the same as the statements sworn to in the affidavit. He tries to explain the affidavit and evidence before the grand jury by saying that at the time he and appellant were being jointly charged with the killing of George Spivey, and that the elder Summers had promised to employ counsel to defend him. He later went before the grand jury at the same term of court, and asked to be permitted to correct his former statements, and, while on this occasion his evidence was materially different from that first given before the grand jury, he did not testify in making the correction that, when appellant discovered George Spivey walking in the road ahead of him, he said, ''Watch me make him give me the road.''

It is evident that on some of these occasions the witness had very little regard for his word or oath, and the excuse given by him for the variance in his statements is not sufficient to remove the stigma or odium that rightfully attaches to one who willfully and deliberately makes a false statement.

The jury, however, heard his evidence as to how the injuries to George Spivey occurred as well as evidence of the conflicting statements theretofore made by him, and, as indicated by the verdict, attached more credit and weight to his evidence and that of other witnesses for appellee than they did to the evidence of appellant and his witnesses. This is easily understood when we come to consider that the evidence of Tom Bryant is supported and corroborated by other witnesses and by physical facts and circumstances as made to appear by the evidence. While there is a sharp conflict between the evidence of opposing parties, there is unquestionably sufficient evidence to support the verdict of the jury, and, if full credit be given to the evidence of the witness Bryant, it would appear that the verdict is supported by a prevailing weight of evidence. That the credibility of witnesses and the weight to be given their evidence are matters that address themselves to a jury is not an open question in this state. It was within the province of this jury to determine the weight to be given to the conflicting evidence, and not only so, but to determine the credibility of witness Bryant and the weight to be given his conflicting statements. This court will not reverse the judgment because of conflicting testimony nor because the jury credited one set of witnesses rather than

another. Morton v. Sanders, 178 Ky. 836, 200 S. W. 24; Lawson v. Hatfield, 145 Ky. 779, 141 S. W. 36; Bobich v. Dackow, 229 Ky. 830, 18 S. W. (2d) 280; Walker v. Hester, 178 Ky. 342, 198 S. W. 912; Louisville & N. R. Co. v. Mitchell, 173 Ky. 622, 191 S. W. 465. A verdict will only be disturbed when it is palpably against the weight of the evidence, or clearly shows that it resulted from mistake or from passion or prejudice on the part of the jury. Chesapeake & O. Ry. Co. v. Dean, 160 Ky. 757, 170 S. W. 167; Louisville & N. R. Co. v. Sinclair, 171 Ky. 562, 188 S. W. 648.

Other grounds urged for reversal by appellant relate to the instructions given or refused to be given by the court. Objection is made to instruction No. 1, on the ground that it assumes that Spivey was struck and injured by the car driven by appellant. The instruction under criticism, after reciting the duties of a driver of an automobile, continues: ''. . . And if the jury shall believe from the evidence that he failed to perform any one or more of the aforesaid duties, and that his failure so to do was the direct and proximate cause of the striking of George Spivey by the car driven by defendant, if such was done. . . .''

In the light of that portion of the instruction quoted, it is at once apparent that this objection to the instruction is without merit. A jury of sensible men would readily understand by reading this instruction that the court in giving it was not assuming that deceased was struck by appellant's car, but was submitting that question for the determination of the jury.

It is further urged that the court erred in not giving instruction ''A'' offered by appellant. That instruction authorized a finding for defendant, if the jury believed that the striking and killing of Spivey was due to an accident and not to a negligent or willful act on the part of appellant. Under instruction No. 1 given by the court, the jury could not find against appellant, unless they believed that the death of Spivey was the proximate result of negligence upon the part of appellant as therein defined. Any theory of appellant's case embraced in instruction A offered by his counsel is fully covered by the instruction given by the court.

It is further insisted that the court erred in not giving instruction E offered by appellant, which is as follows: ''You are further instructed that a reasonable rate of speed in the running of defendant's automobile

as meant by instruction 1, is a speed not exceeding 40 miles per hour.'' Appellant's contention is evidently based on the following provision of section 2739g-51, Ky. Statutes:

> ''(3) Where a highway is outside of a closely built up business section of any city or town, or the residence portion of any city or town, and is on a straightaway, unobstructed highway, if the rate of speed of automobiles thereon exceed forty miles an hour it shall be prima facie evidence of unreasonable and improper driving.''

The general provision of that section is that the operator of a motor vehicle shall not drive at a greater rate of speed than is reasonable and proper, having regard for the traffic and use of the highway. By that part of the section quoted, a speed in excess of 40 miles per hour is made prima facie evidence of unreasonable and improper driving. But this section does not provide nor is it susceptible of a construction warranting a conclusion or authorizing an instruction that any rate of speed less than the maximum mentioned is reasonable or proper. What constitutes a reasonable rate of speed is a matter to be determined by a jury from the circumstances and conditions as shown in the case submitted to them for consideration. The court did not err in refusing to give this instruction.

The last ground urged for reversal is that the court refused to give instruction B offered by appellant. In substance and effect, this instruction directed the jury to find for defendant, if they believed from the evidence that appellant's car was crowded off into the ditch on the right-hand side of the road and that he ran his car in the ditch until he had passed the point where Spivey's body was found. Manifestly the court did not err in refusing to give this instruction. If the jury believed from the evidence that appellant's car passed beyond Spivey and on the opposite side of the road before it crossed the road and ran into the telephone, they could not have reached the conclusion that he was struck by appellant's car. That theory of appellant's case was clearly and accurately presented to the jury by instruction No. 1.

For the reasons indicated, the judgment of the lower court is affirmed.